**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY L. BUSKIRK,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:22-cv-1826-JDW** |
| | : | |
| **PENNSYLVANIA BOARD OF** | : | |
| **PROBATION AND PAROLE,** *et al.,* | : | |
| **Defendants.** | : | |

## MEMORANDUM

Gary Buskirk asserts that Pennsylvania Probation Agents Scott Mugavero and Christopher Mitzak and their supervisor Mrs. Robinson violated his constitutional rights in their administration of his probation. I can't tell from the record whether a state court imposed on Mr. Buskirk special conditions of probation. He alleges that the Court did not, so I have to credit that allegation on the record before me. When I do that and accept as true the rest of his allegations, he has stated viable claims against each Defendant. And, because Defendants have not suggested that his claims fall in some legal gray area, the doctrine of qualified immunity does not protect them at this point. I will therefore deny the Defendants' motion to dismiss and permit the case to proceed in discovery.

## I.    FACTUAL ALLEGATIONS

Mr. Buskirk pled guilty in two different Pennsylvania counties to separate charges related to driving under the influence. In 2014, he was sentenced in the Lehigh County Court of Common Pleas and the Northampton County Court of Common Pleas to

consecutive terms of confinement followed by probation. *See Commonwealth v. Buskirk*, CP-39-CR-0001663-2014 (C.P. Lehigh) & CP-48-CR-0003073-2012 (C.P. Northampton). For his sentence in Northampton County, the judge did not impose any conditions on his probation.

Mr. Mitzak and Mr. Mugavero are parole agents with the Pennsylvania Board Of Probation And Parole, and Mrs. Robinson is their supervisor. Mr. Mugavero supervised Mr. Buskirk from August 2020 to December 2020, Mr. Mugavero texted Mr. Buskirk dozens of times, made two visits to his home, and required him to make two visits to the probation office. Mr. Mugavero also demanded to see Mr. Buskirk's COVID-19 test results, contacted the mother of Mr. Buskirk's children, and lied during Mr. Buskirk's custody dispute. Mr. Mugavero's actions led to a bad outcome in the custody dispute and restricted Mr. Buskirk's movement to such a degree that Mr. Buskirk missed work deadlines and lost clients and money.

Mr. Mitzak took over supervision of Mr. Buskirk in December 2020. Mr. Mitzak did not come to their first scheduled visit at Mr. Buskirk's home. Mr. Mitzak then called Mr. Buskirk to the probation office and placed Mr. Buskirk on a GPS monitor, even though the sentencing judge had not ordered such monitoring. Soon thereafter, Mr. Buskirk was at his mother's house, and Mr. Mitzak showed up. Mr. Buskirk's mother's house was not on Mr. Buskirk's home plan for his probation, so the GPS monitor led Mr. Mitzak to Mr. Buskirk's mother's house. Mr. Buskirk's mother asked Mr. Mitzak to leave, but he refused.

Instead, he stayed for two hours, searched the house, and interfered with the care of Mr. Buskirk's disabled brother.

From December 2020 to March 2021, Mr. Mitzak contacted Mr. Buskirk dozens of times by phone and text; required numerous home and office visits; seized and searched his phone; searched his residence three times in a month; made him turn over his work orders; contacted the mother of Mr. Buskirk's children; gave false testimony at a custody hearing; imposed an 8:00 p.m. curfew; and restricted Mr. Buskirk's movement to Northampton County, despite the fact that Buskirk's landscaping company does work in many other counties.

On March 29, 2021, Mr. Mitzak caused a warrant to issue for Mr. Buskirk's arrest for a probation violation in connection with the Northampton County case. U.S. Marshals detained him, though it's not clear when. Sometime in 2021, Mr. Mitzak also issued warrants in connection with the Lehigh County case, even though Mr. Buskirk satisfied his penalty for that case on December 21, 2020.

Mr. Buskirk did not have an initial hearing for the alleged probation violation in the Northampton County case until March 24, 2022, a year after the issuance of the warrant, and "over 12 months later" he still had not had the required second hearing. He filed numerous motions to vacate the bench warrant while he was incarcerated, and the judge overseeing his proceedings in Northampton County granted his motion and vacated the bench warrant on December 21, 2023. Mrs. Robinson was Mr. Mitzak's supervisor, and she

authorized Mr. Mitzak's actions, including the use of the GPS monitor, the search of Mr. Buskirk's mother's home, and the issuance of the warrant that led the U.S. Marshals to arrest Mr. Buskirk.

Mr. Buskirk filed this case on May 9, 2022. At the time, his revocation proceedings were still pending, so Judge Smith (to whom the case was assigned) stayed the case. In June 2024, Mr. Buskirk informed the Court that the revocation proceedings had terminated. The case had been reassigned to me, and I lifted the stay. Mr. Buskirk then filed an Amended Complaint. He asserts violations of his rights under the Fourth and Eighth Amendments. He seeks $1.6 million in damages to compensate him for the business he lost while incarcerated. The Defendants move to dismiss his claims, primarily on the basis that they are shielded from liability under the doctrine of qualified immunity.

## II.    STANDARD OF REVIEW

A district court may dismiss a complaint where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss, courts consider "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotations omitted). "[A] court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (citation omitted). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Judges interpret complaints from *pro se* litigants liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III.    ANALYSIS

The "qualified-immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). Because qualified immunity bestows immunity from suit, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). However, the "[i]mperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." *Curley v. Klem,* 298 F.3d 271, 278 (3d Cir. 2002).

To determine if qualified immunity applies, courts ask two questions: (A) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a federal right; and (B) whether the right at issue was clearly established when the conduct took place. *Tolan v. Cotton*, 572 U.S. 650, 655–

56 (2014). The first question overlaps with the merits of the liability determination, so I often assess all claims by considering the qualified immunity test.[1]

## A.    Eighth Amendment

To state a claim under the Eighth Amendment for over-supervision and incarceration without penological justification, which is what I understand Mr. Buskirk to assert, a plaintiff must plead three elements: (a) an official had knowledge of the probationer's problem and thus knowledge of the risk that unwarranted punishment was being, or would be, inflicted; (b) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the probationer's plight; and (c) a causal connection between the official's response to the problem and the unjustified detention. *See Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010), *as amended* (May 25, 2010).

Mr. Buskirk pled facts to support each of those elements. He alleged that the judge in Northampton County did not attach special conditions to his probation, which Mr. Mitzak, Mr. Mugavero, and Mrs. Robinson would have known based on their positions as parole agents. He also alleges that they caused the restrictions on his liberty. Read liberally, that's enough to state a claim.

---

[1] In their Motion, Defendants base their qualified immunity arguments all on the reasonableness of their actions. In effect, they argue that they didn't violate Mr. Buskirk's rights. They don't make any arguments about any law not being clearly established, so I have no occasion to reach the second prong of the test.

Defendants argue that Messrs. Mitzak and Mugavero had the power to do what they did if they acted pursuant to a "special order of the sentencing court." (ECF No. 28-1 at 8.) The problem is, Defendants have not shown that Mr. Buskirk was subject to a special order of the sentencing court. That makes this case different from the cases on which Defendants rely, like *Commonwealth v. Smith*, 325 A.3d 794 (Pa. Super. 2024). In *Smith*, the court noted that the probationer was "expressly sentence[d] ... to special probation" by a sentencing order that included a command that the probationer "be placed on special probation for a period of two (2) years to be supervised by the Pennsylvania Board of Probation and Parole." *Smith*, 325 A.3d at 800 (citation and emphases omitted).

Defendants claim that "[e]ven though the sentencing judge may not have issued any probation conditions at the time of sentencing, Buskirk was subject to the general conditions for special probationers by operation of state regulation," and that they "appropriately relied on [the special probation] regulation in supervising Buskirk." *Id.* at 9–10 (citing, *inter alia*, 37 Pa. Code § 65.4). Without a basis to determine that Mr. Buskirk was subject to an order placing him on special probation, I cannot determine what Pennsylvania law empowered Messrs. Mitzak and Mugavero to do during their supervision. However, I note that the Northampton County Common Pleas Court vacated the bench warrant against Mr. Buskirk, which at least raises the possibility that he was not subject to special conditions of parole.

**B.    Fourth Amendment**

**1.    Search and seizure**

The Fourth Amendment protects against "unreasonable searches and seizures." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001). The standard for reasonable searches for probationers is generally lower than it is for others because they "do not enjoy the absolute liberty to which every citizen is entitled, but only … conditional liberty properly dependent on the observance of special [probation] restrictions." *Griffin v. Wisc.*, 483 U.S. 868, 874–75 (1987). For probationers, that often means that officers need "no more than reasonable suspicion" to search a probationer. *See United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005).[2] Even assuming that the lower standard applies in this case, Mr. Buskirk has pled a plausible violation of his rights.

Mr. Mitzak placed a GPS monitor on Mr. Buskirk, with Mrs. Robinson's acquiescence. Monitoring an individual via GPS is a search within the meaning of the Fourth Amendment and is therefore subject to the same requirements as any other search. *See United States v. Jones*, 565 U.S. 400, 404 (2012). Mr. Buskirk alleges that Mr. Mitzak had no basis to place the GPS monitor on him. That's enough, read liberally, to allege a lack of reasonable suspicion. Therefore, the claim can proceed.

---

[2] In *Williams*, the defendant signed a consent agreement permitting searches of his property. Nothing in the record before me suggests that Mr. Buskirk signed a similar agreement. It's therefore not clear that the lower, "reasonable suspicion" standard applies in this case. But I don't have to resolve that now because Mr. Buskirk has pled enough to overcome even that lower justification for a search.

Mr. Buskirk also complains about searches of his home and his mother's home. It's not clear that he has standing to assert a Fourth Amendment violation for a search of his mother's home because he has not established that he has an expectation of privacy there. *See U.S. v. Kennedy*, 638 F.3d 159, 163–64 (3d Cir. 2011). However, he does have an expectation of privacy for his own home. And, read liberally, the Amended Complaint alleges that Mr. Buskirk searched his home without reasonable suspicion.

### 2.    False arrest/malicious prosecution

To establish a Fourth Amendment claim for false arrest, a plaintiff must show that an officer lacked probable cause to arrest him. *See Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). To establish a Section 1983 malicious prosecution claim, a plaintiff must allege (a) the defendants initiated a criminal proceeding; (b) the proceeding ended in the plaintiff's favor; (c) the proceeding was initiated without probable cause; (d) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (e) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

Mr. Buskirk alleges that he didn't do anything wrong, that Mr. Mitzak—with Mrs. Robinson's acquiescence—had him arrested, that the proceeding ended in his favor when the Northampton County Court of Common Pleas vacated the warrant, Mr. Mitzak and

Mrs. Robinson were acting without the intent to bring him to justice, and Mr. Buskirk spent time in custody as a result. That's enough to satisfy the elements of these claims.

The Defendants' arguments might be right, but at this point, they haven't given me enough information to show me that that's the case. There's no doubt that, at an initial, pre-revocation hearing, the Northampton County Court of Common Pleas ordered Mr. Buskirk held in custody. That decision suggests there was probable cause for the arrest warrant. But then the state court vacated that order. Under Pennsylvania law, to "vacate" an order means to invalidate it, so that it is null and void. *See Com. V. Wilson*, 934 A.2d 1191, 1196 (Pa. 2007). It's therefore not clear whether the state court has issued an order that establishes probable cause. And, without such an order, I have no choice but to accept the truth of Mr. Buskirk's allegations and to construe them liberally in his favor. When I do that, I conclude that he has pled a lack of probable cause.

Defendants also appear to argue that Mr. Mitzak and Mrs. Robinson acted appropriately because they lodged warrants to detain Mr. Buskirk based on his status as a "special probationer." (ECF No. 28-1 at 14–15.) But again, there's nothing in the record to let me determine that any judge imposed special conditions of probation on Mr. Buskirk, so at this point I have no basis to credit that argument.

### C.    Supervisory Liability

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Liability

under § 1983 cannot be predicated on a *respondeat superior* basis. *See Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207)). Thus, a supervisor can be held liable where "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quote omitted). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citations omitted).

In his Amended Complaint, Mr. Buskirk alleges that Mrs. Robinson "authorized" the GPS monitor that Mr. Mitzak placed on Mr. Buskirk and the searches of his and his mother's homes. (ECF No. 19 at 10.) He clarifies in his opposition to this Motion that Mrs. Robinson was present when Mr. Mitzak placed the GPS monitor on him and said, "We

want to [know] where you are going."[3] (ECF No. 31 at 7.) Those allegations, read in the light most favorable to Mr. Buskirk and taken as true, demonstrate Mrs. Robinson's personal involvement in the placement of allegedly improper conditions on Mr. Buskirk. They therefore suffice to state a claim for supervisory liability.

Defendants argue that Mrs. Robinson cannot be liable just for "signing or concurring in a warrant." (ECF No. 28-1 at 6.) There are two problems with that argument, though. First, the argument ignores the specificity of Mr. Buskirk's allegations. His allegation is not just of a supervisor nodding in the direction of a warrant. It is of Mrs. Robinson's knowledge of his case and either acquiescence in or participation in the imposition of conditions. That's what Section 1983 requires for supervisory liability. Second, Defendants base their argument on the decision in *Pitman v. Ottehberg*, No. 10-2538, 2013 WL 5466997, at *13 (D.N.J. Sept. 30, 2013). But that case is meaningfully different from this one because in that case, the supervisor was not involved in the investigation of the plaintiff and no input or control over the decision to prosecute the plaintiff after his arrest. *See id.* at *5–6, *12. In contrast, Mrs. Robinson had direct involvement in the imposition of conditions on Mr. Buskirk.

---

[3] When evaluating a motion to dismiss, a court may look to "allegations contained in the other court filings of a *pro se* plaintiff" to clarify statements made in the complaint. *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992) (citing, *inter alia*, *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).

## IV.    CONCLUSION

Even after reviewing publicly available documents, I can't tell what exactly happened when Mr. Buskirk was sentenced or in connection with his revocation hearing. When I take the facts as true, they state a claim for violation of Constitutional rights, and there's no uncertainty around the applicable law. I therefore will deny Defendants' Motion To Dismiss. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

April 14, 2025