**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY L. BUSKIRK,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:22-cv-01826-JDW** |
| | : | |
| **PENNSYLVANIA BOARD OF** | : | |
| **PROBATION AND PAROLE, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Gary Buskirk asserts that Pennsylvania Probation Agents Scott Mugavero and Christopher Mitzak, along with their supervisor Alison Robinson, violated his constitutional rights in their administration of his probation. But Mr. Buskirk has failed to show that there is any genuine dispute of material fact in this case, and the facts show otherwise. Thus, I will grant summary judgment in favor of Defendants.

## I. BACKGROUND

Mr. Buskirk pleaded guilty to two separate charges of driving under the influence in two Pennsylvania counties. In 2013, he pleaded guilty to “Driving Under the Influence: General Impairment” in violation of 75 Pa. C.S. § 3802(a)(1) in Northampton County. He was sentenced to 60 months of “County Intermediate Punishment,” along with 7 days of “Restrictive Intermediate Punishment” at the Northampton County Prison, 23 days of work release, 60 days of house arrest with electronic monitoring, and a $1,500 fine. Then, in 2014, he pleaded guilty to “Driving Under the Influence: Highest Rate of Alcohol” in

violation of 75 Pa. C.S. § 3802(c) in Lehigh County. He was sentenced to 1-2 years' incarceration to be followed by 3 years of special probation.

Following Mr. Buskirk's guilty plea in Lehigh County, Judge Craig Dally, a judge in Northampton County, revoked Mr. Buskirk's original sentence from the Northampton County case and resentenced him to 1-2 years' incarceration to be followed by three years of "state probation" to run consecutively to the Lehigh County sentence. Following the resentencing, Judge Dally submitted a formal request to the Pennsylvania Board of Probation and Parole (the "Board") asking that Mr. Buskirk be accepted for "special probation." (ECF No. 51-8 at 1.) The final page of Judge Dally's request provides that "[i]f the [Board] accepts supervision of this case, [Mr. Buskirk] must comply with the General Conditions of Special Probation or Parole … as well as any Special Conditions of Probation or Parole imposed by the Court." (*Id.* at 3.) The Board accepted the special probation request.

Mr. Buskirk reviewed and acknowledged that he understood the conditions governing his special probation by signing Pennsylvania Board of Probation and Parole Form 235.[1] That form lists the conditions of his parole, including that he remain in the district unless he obtained "prior written permission of the parole supervision staff," report "regularly as instructed and follow[] any written instructions of the Board or the parole

[1] Mr. Buskirk makes much of the fact that Form 235 requires two witnesses when the form is signed by mark and that his form only lists one witness. But Mr. Buskirk did not sign Form 235 by mark; he signed it with his signature. Thus, only one signature was required.

supervision staff," and abstain from the "possession" and "use of controlled substances." (ECF No. 51-9 at 1.) The form also includes a provision stating, "[i]n consideration of being granted the privilege of probation/parole by the Court, I hereby agree that: … I expressly consent to the search of my person, property, and residence without a warrant by agents of the [Board]." (*Id.*) The form further provides that if Mr. Buskirk violates any condition of his parole, the Board may lodge a detainer against him.

Mr. Buskirk was supervised by Agent Mugavero through November 2020. On August 27, 2020, Agent Mugavero conducted a home visit with Mr. Buskirk and described him as verbally aggressive and appearing under the influence of drugs or alcohol. Agent Mugavero requested that Mr. Buskirk provide him with a urine sample, but Mr. Buskirk refused to provide one.[2] In addition to this incident, Mr. Buskirk left the parole district without express consent from Agent Mugavero.

[2] In his Answer's To Defendants' Statement Of Material Facts, Mr. Buskirk makes several denials related to his providing urine samples to parole agents. In particular, he denies that he refused to provide a urine sample to Agent Mugavero on August 27, 2020. (ECF No. 53 at ¶¶ 27–28.) He also denies providing Agent Fallock with a urine sample that tested positive for methamphetamines on December 14, 2020 (ECF No. 53 at ¶ 39.) He also denies providing multiple positive samples to Agent Mitzak. (ECF No. 53 at ¶¶ 51, 53, 56.) But even though Mr. Buskirk disputes these facts, he fails to point to any evidence in the record to support his denials. He just makes general denials without any citation to the record. At best, he speculates that one of the samples he provided may not be his because Agent Mitzak stored it in his truck overnight. (*See* ECF No. 53 at ¶ 53.) But unsupported speculation and general denials are not enough to create a genuine dispute of fact. *See Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).

In December 2020 and January 2021, Agent Fallock supervised Mr. Buskirk. During this time, Mr. Buskirk told Agent Fallock that he regularly traveled outside the district for work and family obligations. But Agent Fallock never provided Mr. Buskirk with permission to travel outside the district. Considering Mr. Buskirk's admissions to leaving the district, Agent Fallock ordered Mr. Buskirk to report to the Allentown District Office on December 9, 2020. Agent Fallock then placed a GPS monitor on Mr. Buskirk at Ms. Robinson's direction. Less than a week later, Mr. Buskirk provided Agent Fallock with a urine sample that tested positive for methamphetamines and admitted to using methamphetamines. That same day, Agent Fallock noticed that Mr. Buskirk's GPS device had recorded numerous "shielding violations," which occur when the GPS monitor shuts down for various periods of time. Agent Fallock then issued a written warning for Mr. Buskirk's violations and instructed him to keep his GPS fully charged and to report for a drug and alcohol assessment. About two weeks later, on January 4, 2021, Agent Fallock discovered that Mr. Buskirk's GPS had shut down for multiple hours the previous day.

Agent Mitzak began supervising Mr. Buskirk in early 2021. On either February 16 or March 16, 2021, Agent Mitzak attempted to contact Mr. Buskirk by phone but was unable to reach him. Agent Mitzak then used the GPS monitor and located Mr. Buskirk at his mother's residence.[3]

[3] Mr. Buskirk seems to deny that Agent Mitzak used the GPS monitor to locate Mr. Buskirk at his mother's house and cites to a letter from his mother describing the events that day.

Agent Mitzak entered the property and found Mr. Buskirk asleep in the basement.[4] When Mr. Buskirk woke up, Agent Mitzak reported that he "seemed out of it" and "under the influence or coming off something." (ECF No. 51-13 at ¶ 7.) Agent Mitzak then had Mr. Buskirk provide him with a urine sample, which tested positive for methamphetamines. Over the next few weeks, Mr. Buskirk provided two more urine samples that tested positive for methamphetamines. And on March 25, 2021, Agent Mitzak instructed Mr. Buskirk to report to the Allentown parole office the following day. Mr. Buskirk, however, did not report as directed and, in fact, never showed up any day after that. Mr. Buskirk then let his GPS monitor die.[5]

Judge Dally issued a bench warrant for Mr. Buskirk on March 29, 2021, for violating his terms of supervision by failing to report. At an evidentiary hearing, the Northampton County Court Administrator made a finding of probable cause that Mr. Buskirk violated the conditions of his original sentence. The Northampton Court of Common Pleas confirmed the Court Administrator's findings and scheduled a hearing before Judge Dally.

---

(*See* ECF No. 53 at ¶ 47.) But the letter says nothing about how Agent Mitzak located Mr. Buskirk; it merely describes what happened once Agent Mitzak arrived at the house. Because this evidence has nothing to do with how Agent Mitzak located Mr. Buskirk, it does not constitute a genuine dispute of material fact.

[4] Mr. Buskirk claims that he went to his mother's house to drop off mail addressed to his brother that he had received at his home. (ECF No. 51-2 at 19.)

[5] Mr. Buskirk makes a conclusory allegation that his GPS monitor died because Agent Mitzak took the charger from him and told him he would not need it. But Mr. Buskirk points to nothing in the record to support this allegation. And "mere allegations" without any evidentiary support cannot create genuine issues of material fact. *Quiroga*, 934 F.2d at 500.

(*Id.* at ¶ 67.) But instead of finding that Mr. Buskirk violated his terms of supervision, Judge Dally dismissed the case, reasoning that there was no evidence that a specific reporting requirement was imposed when Mr. Buskirk's was resentenced in 2014. (ECF No. 51-18 at 1 n.2.)

Mr. Buskirk filed this action on May 9, 2022. (ECF No. 2.) At the time, his revocation proceedings were still pending, so Judge Edward G. Smith (to whom the case was assigned) stayed the case. In March 2024, Mr. Buskirk informed the Court that the revocation proceedings had terminated. The case had been reassigned to me, and I lifted the stay. Mr. Buskirk then filed an Amended Complaint. He asserts violations of his rights under the Fourth and Eighth Amendments. He seeks $1.6 million in damages to compensate him for the business he lost while incarcerated. The Defendants move for summary judgment on Mr. Buskirk's claims.

## II. STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). A court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). And the dispute is "genuine" "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[i]f the evidence is merely colorable … or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

## III. ANALYSIS

To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). The plaintiff must also show that the alleged deprivation was committed by a person acting under color of state law. *Id.*

### A. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has interpreted this prohibition not only to include punishments that are "physically barbarous" but also those that "involve the unnecessary and wanton infliction of pain" and those that "are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Among such punishments are those that are "totally without penological justification." *Id.*

With respect to Mr. Buskirk's Eighth Amendment claim, there is no genuine dispute of material fact that prevents summary judgment in Defendants' favor. The probation conditions that Defendants imposed on Mr. Buskirk do not amount to punishments that are cruel and unusual. Mr. Buskirk contends that he suffered cruel and unusual punishment because he had to report to parole agents, remain in his assigned parole

district absent written permission, wear a GPS monitor, and be subject to random searches by his parole agents. But it cannot be said that these conditions were "grossly disproportionate to the severity of [his] crime" or "totally without penological justification." *Rhodes*, 452 U.S. at 346. Mr. Buskirk was convicted of driving under the influence – a serious and dangerous crime. Restrictions such as these are "meant to assure that the probation serves a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987). And given the severity of his crime, I cannot say that any of the conditions imposed on Mr. Buskirk were disproportionate to his crime or totally without penological justification. Defendants are thus entitled to summary judgment on Mr. Buskirk's Eighth Amendment claim.

### B. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This language has generally been interpreted to mean that the government may not conduct a search or make an arrest without probable cause. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001); *see also Michigan v. Tyler*, 436 U.S. 499, 514 n.4 (1978) (Stevens, *J.* concurring).

### 1. Search and seizure

Probationers, like everyone else, are protected by the Fourth Amendment's requirement that searches and seizures be "reasonable." *Griffin.*, 483 U.S. at 873. Whether a search is "reasonable" depends on the totality of the circumstances, balancing "the degree to which it intrudes upon an individual's privacy" and "the degree to which it is needed for the promotion of legitimate governmental interests." *United States v.* Knights, 534 U.S. 112, 118–19 (2001) (internal quotation marks omitted). In the context of a probation officer conducting a warrantless search of a probationer who consented to warrantless searches, the balance of those interests leads to "a lesser than probable-cause standard," meaning the officer does not need probable cause for his search to be reasonable. *Id.* at 121. Indeed, in this context, a probation officer's search is reasonable when the officer has "reasonable suspicion that a probationer … is engaged in criminal activity." *See id.*

Mr. Buskirk contends that Defendants violated his Fourth Amendment right against unreasonable searches and seizures by (1) installing a GPS monitor on his person, (2) searching his residence and cellphone, and (3) searching his mother's residence. None of this, however, was unreasonable.

#### a. GPS monitor

Mr. Buskirk argues that Defendants unreasonably searched his person in violation of the Fourth Amendment by installing and continuing to use a GPS device to monitor his

whereabouts during his probationary term. But Agent Fallock had reasonable suspicion that Mr. Buskirk was violating his terms of probation because Mr. Buskirk admitted to Agent Fallock that he left the parole district without written permission. Indeed, Mr. Buskirk does not dispute that he informed Agent Fallock of his trips outside of the district without written permission. Instead, he tries to justify them as being for family and work obligations. It was only after Mr. Buskirk made these admissions that Agent Fallock installed the GPS monitor on Mr. Buskirk with Ms. Robinson's acquiescence.

Agents Fallock and Mitzak also had reasonable suspicion to support the continued monitoring of Mr. Buskirk. Indeed, Agent Fallock had observed that Mr. Buskirk's GPS monitor had experienced multiple shielding violations where the device shut down for various periods of time. Even after Agent Fallock issued a written warning, Mr. Buskirk let the GPS monitor shut down again. And when Agent Mitzak instructed Mr. Buskirk to report to the probation office, Mr. Buskirk failed to do so and instead let his GPS battery die.

Based on the totality of these circumstances, the agents had reasonable suspicion that Mr. Buskirk was violating the geographic restrictions set by his probation conditions. Thus, while monitoring Mr. Buskirk via a GPS constitutes a search, *see United States v. Jones*, 565 U.S. 400, 404 (2012), that search was not unreasonable.

**b. Mr. Buskirk's residence and cellphone**

Mr. Buskirk also contends that Agent Mitzak unreasonably searched his home and cellphone. But Mr. Buskirk fails to provide any evidence that Agent Mitzak searched his home. And even if Agent Mitzak did so, he had reasonable suspicion to believe Mr. Buskirk was violating the terms of probation by possessing and using illegal drugs. Mr. Buskirk had provided several urine samples that tested positive for methamphetamine before and during Agent Mitzak's supervision of him. What's more is that Agent Mitzak observed that Mr. Buskirk "seemed out of it" and "under the influence or coming off something" at the time he supposedly looked through Mr. Buskirk's cellphone. (ECF No. 51-13 at ¶ 7.) The combination of Mr. Buskirk's positive drug tests and Agent Mitzak's impression of Mr. Buskirk's behavior amounts to a reasonable suspicion that Mr. Buskirk was using and maybe in possession of illegal drugs. Thus, even if Agent Mitzak's actions constitute searches, those searches were not unreasonable.

**c. Residence of Mr. Buskirk's mother**

Mr. Buskirk further contends that Agent Mitzak conducted an unreasonable search of the home owned by Mr. Buskirk's mother. The major problem with this claim, however, is that Mr. Buskirk does not have standing to assert a Fourth Amendment violation for the search of his mother's home. Fourth Amendment standing "requires that the individual challenging the search have a reasonable expectation of privacy in the property searched." *United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000). Mr. Buskirk did not have a

reasonable expectation of privacy in his mother's home. Indeed, he admits that he does not live there nor does he have an ownership interest in the home. (ECF No. 53 at ¶ 48.) And, in fact, the only reason he was even at his mother's home was to drop off mail addressed to his brother that he received at his home. (ECF No. 51-2 at 19.) Ultimately, Mr. Buskirk was "merely present with the consent of the homeowner." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). That, however, is not enough to give him a reasonable expectation of privacy in his mother's home. *See id.* He therefore may not bring a Fourth Amendment claim for any unreasonable search of it.

### 2. False arrest/malicious prosecution

To establish a Fourth Amendment claim for false arrest, a plaintiff must show that an officer lacked probable cause to arrest him. *See Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause exists where the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent man to believe the suspect had committed or was committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Mr. Buskirk contends that Agent Mitzak and Ms. Robinson falsely arrested him and engaged in malicious prosecution when they lodged probation warrants to commit and detain him. But Agent Mitzak and Ms. Robinson had probable cause to arrest Mr. Buskirk. Prior to the warrants being lodged against him, Mr. Buskirk had provided multiple urine samples that tested positive for methamphetamine. Mr. Buskirk also failed to appear at the parole office in direct violation of Agent Mitzak's directive. In fact, Mr. Buskirk never

reported to the parole office following that directive and instead let his GPS battery die. Mr. Buskirk was prohibited from possessing and using drugs not only by federal and state law but also by his probation conditions. Those conditions also required him to report regularly as instructed by his probation officers. Given that he tested positive for methamphetamines on multiple occasions, failed to report to probation on the day Agent Mitzak directed him to, and let his GPS monitor die, the agents had probable cause to arrest him. His claims for false arrest and malicious prosecution thus fail.

Judge Dally's dismissal of the probation violation charge does not change this analysis. Prior to that ruling, the Agents had reason to think that there was a reporting requirement based on what was in Form 235, and the Agents also had other bases besides the reporting violations to believe that Mr. Buskirk had violated his probation, including his drug use. Therefore, Judge Dally's decision does not alter my analysis.

**C. Supervisory Liability**

A supervisor can be liable under Section 1983 if she participated in violating the plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in her subordinate's violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). But if no underlying violation occurred, then there is nothing to hold the supervisor liable for.

Mr. Buskirk claims that Ms. Robinson "authorized" the GPS monitor that Agent Mitzak placed on him and the searches of his and his mother's homes. (*See* ECF No. 19 at

10, 13.). He also contends that she agreed to lodge a detainer against him following his failure to report to probation. (*See id.* at 13.) But since I hold that none of these amounted to a constitutional injury, Ms. Robinson cannot be held liable as a supervisor. Thus, Mr. Buskirk's claims against her fail.

**D. Qualified Immunity**

The "qualified-immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (alterations accepted and internal quotation marks omitted). To determine if qualified immunity applies, courts ask two questions: (A) whether the defendant's conduct violated a federal right; and (B) whether the right at issue was clearly established when the conduct took place. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). The relevant inquiry for determining whether a right was clearly established is if it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Defendants are entitled to qualified immunity. Mr. Buskirk failed to show that Defendants' conduct violated any federal rights, so the claim would fail at step one of the qualified immunity analysis. But even if Defendants' conduct violated a federal right, that right was not clearly established at the time Defendants' violation occurred. That's because it would not have been clear to reasonable officials in Defendants' positions that

their conduct was unlawful. Mr. Buskirk doesn't cite a single case that would have put Defendants on notice that any of their conduct was impermissible. Meanwhile, Defendants point to several cases that suggest the opposite. In *Alexander v. Eaton*, the district judge found that qualified immunity protected (1) a probation agent who drug tested the special probationer plaintiff to ensure he was not using illegal drugs and (2) a different probation agent who required the special probationer plaintiff to follow written instructions. *See* Case No. 5:22-cv-05066-JMG, 2025 WL 242481, at *6 (E.D. Pa. Jan. 17, 2025). In *Ferrara v. Piazza*, a federal judge explained that probationers "are commonly subject to a number of conditions which will comport with the limited rights afforded to them – such as drug tests, restrictions on houses, jobs, travel, or the like." Case No. 22-3013, 2022 WL 16540671, at *8 (E.D. Pa. Oct. 28, 2022). The judge in *Collura v. Ford* acknowledged that subjecting a parolee to urinalysis to determine whether the parolee was using drugs may be proper when based on reasonable suspicion. Case No. 13-4066, 2016 WL 409228, at *21–22 (E.D. Pa. Feb. 3, 2016). And the Third Circuit, albeit in an unpublished opinion, held that parole agents may initiate an arrest based on probable cause. *See United States v. Noble*, 326 F. App'x 125, 127–28 (3d Cir. 2009). Considering this caselaw and the lack of caselaw put forth by Mr. Buskirk, I cannot say that Defendants' conduct violated clearly established federal rights. Therefore, Defendants are entitled to qualified immunity on Mr. Buskirk's Fourth and Eighth Amendment claims.

## IV. CONCLUSION

Defendants have shown that there is no genuine dispute of material fact at issue in this case. Defendants did not violate any of Mr. Buskirk's rights secured by the Constitution or the laws of the United States. And even if they had, the right that they violated was not clearly established. Thus, Defendants are entitled to judgment as a matter of law. I therefore will grant Defendants' Motion For Summary Judgment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

**JOSHUA D. WOLSON, J.**

September 10, 2026